UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO MACIEL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>M.A.C. COSMETICS, INC.,<br><br>Defendant. | Case No. 22-cv-03885-JSC<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 10 |

Ignacio Maciel and Ruth Torres bring a putative class action against MAC Cosmetics ("MAC") for violations of the California Labor Code and California's Unfair Competition Law. Plaintiffs allege MAC did not reimburse its employees for necessary work-related expenditures. MAC removed the case to the Northern District of California pursuant to the Class Action Fairness Act (CAFA) and Plaintiffs subsequently moved to remand the case to state court. (Dkt. No. 10.) That motion is now pending before the Court.

After considering the parties' briefing, and having had the benefit of oral argument on September 29, 2022, and the parties' post-hearing submissions, Plaintiffs' motion to remand is GRANTED. MAC has not met its burden to establish this Court's subject-matter jurisdiction.

**COMPLAINT ALLEGATIONS**

MAC, a major makeup company incorporated under the laws of the state of Delaware with its principal place of business in New York, (Dkt. No. 1 ¶ 17), hired Plaintiffs Maciel and Torres as retail employees in California for MAC's brick-and-mortar stores, (Dkt. No. 1-1 ¶¶ 3, 5). Plaintiff Maciel worked for MAC from approximately 2015 to July 2021. (*Id*. ¶ 3.) Plaintiff Torres worked for MAC from approximately 2016 to 2020. (*Id*. ¶ 5.) Plaintiffs bring two claims on behalf of themselves and a putative class under California law. (Dkt. No. 1-1.)

1    Plaintiffs worked as retail employees for MAC.  (*Id*. ¶¶ 3, 5.)  As retail employees, MAC
2    expected Plaintiffs to meet a "fashion-forward image to represent the MAC brand to consumers
3    and the general public."  (*Id*. ¶ 17.)  To meet these expectations, MAC employees are instructed to
4    "wear[] specific clothing of distinct design and color" and to "wear[] makeup of distinctive design
5    and color that also matches the MAC brand and is specific to MAC's promotional events."  (*Id*. ¶
6    18.)  In other words, Plaintiffs must purchase makeup from MAC and clothing from other retailers
7    to do their jobs.  (*Id*. ¶¶ 18-21.)  The promotional events requiring the particular makeup looks
8    occur approximately every 2-4 weeks.  (*Id*. ¶ 20.)  If Plaintiffs do not meet these image
9    expectations, they are "subject to reprimand and/or termination for not conforming to MAC image
10   expectations."  (*Id*. ¶ 22.)  MAC has a "policy and practice" where it does not reimburse
11   employees for these makeup and clothing expenses.  (*Id*.)

12   Plaintiffs allege MAC's failure to reimburse Plaintiffs and the putative class for necessary
13   business expenditures violates California Labor Code Section 2800.  (*Id.* ¶¶ 41-54.)  Plaintiffs also
14   allege this same conduct violates California's Unfair Competition Law.  Cal. Bus. & Prof. Code
15   § 17200; (Dkt. No. 1-1 ¶¶ 55-63).

**DISCUSSION**

**A.    Legal Standard**

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs."  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).  "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (cleaned up); *see also Ibarra*, 775 F.3d at 1197 ("Congress intended CAFA to be interpreted expansively.").

Here, two out of three of CAFA's jurisdictional requirements are met and uncontested. First, the size of the putative class exceeds 100 people.  (Dkt. No. 1 ¶ 11.)  Second, there is minimal diversity of citizenship: Plaintiff Maciel is a citizen of California and MAC is organized

2

under the laws of Delaware and has its principal place of business in New York. (*Id.* ¶¶ 13, 17.) The parties contest the third requirement—whether "the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra*, 775 F.3d at 1195.

The amount in controversy is "the *maximum* recovery a plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Once the plaintiffs challenge the amount in controversy, the burden falls on the defendant to prove the amount-in-controversy requirement is satisfied by a preponderance of the evidence. *Dart Cherokee*, 574 U.S. at 82. The "'amount at stake' does not mean likely or probable liability; rather, it refers to *possible* liability." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *see also id.* ("the amount in controversy is supposed to be an estimate of the *entire* potential amount at stake in the litigation").

In proving the possible amount at stake, the defendant may rely on "reasonable assumptions." *Arias*, 936 F.3d at 922.

> The preponderance standard does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden. Rather, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure. The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own. After considering any evidence put forth by the parties, and assessing the reasonableness of the defendant's assumptions, the court then decides where the preponderance lies.

*Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020) (cleaned up). The district court must give both sides the "opportunity to submit evidence and argument" as to whether the case meets the amount-in-controversy requirement. *Ibarra*, 775 F.3d at 1195. This evidence may include "affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* at 1197 (cleaned up).

A defendant's "mere speculation and conjecture, with unreasonable assumptions" cannot establish removal jurisdiction and meet the evidentiary standard. *Id.* An unreasonable assumption is one that is not "grounded in real evidence." *Id.* at 1199. On the other hand, an assumption may

3

1  be reasonable "if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925. When

2  assailing a defendant's assumption, an opposing party may not merely state the assumption is

3  unreasonable; instead, the opposing party should posit an alternative assumption "grounded in real

4  evidence, such as an affidavit [by an aggrieved party]." *Ibarra*, 775 F.3d at 1199.

## B.  The Possible Amount in Controversy

MAC has not met its burden. On the record before the Court, the preponderance of evidence does not support a "possible" amount in controversy exceeding $5 million.

In calculating the possible amount in controversy here, the Court incorporates all the assumptions the parties agreed upon at the September 29, 2022, hearing:

- MAC's assumption the putative class consists of 2,800 people and these putative class members worked a total of "at least 54,827 months" during the relevant time period. (Dkt. No. 1-4 ¶ 6.)

- MAC's assumption the putative class members purchased "one clothing item per month." (Dkt. No. 13 at 13:24-25.)

- Plaintiffs' assumption the putative class consists of 70% women and 30% men. (Dkt. No. 15-1 ¶ 4.) The parties did not discuss non-binary or gender non-conforming class members. Therefore, men purchased 38,378.9 items of clothing and women purchased 16,448.1 items of clothing.

- Plaintiffs' assumption that each putative class member purchased a MAC cosmetic product for a promotional event every three weeks. (Dkt. No. 15-1 ¶ 3, 15-2 ¶ 3.) The parties agree this amounts to 78,324.2 products putative class members purchased for promotional events. (Dkt. Nos. 15 at 10:9, 18 at 3:17-21.)

The three remaining disputed categories are (1) the price of the promotional products purchased; (2) the price of the clothing purchased, as broken down by gender; and, (3) attorneys' fees.

### 1.  Price of promotional products purchased

Two factors are involved in estimating the amount in controversy on the claim for reimbursement for purchased MAC products: (1) the number of products purchased, (2) and the price of these products to be used in calculating the possible amount in controversy.

The parties agree that 78,324.2 MAC products purchased by the putative class members during the class period is a reasonable estimate. They dispute, however, the estimated price of

4

each purchased product. In support of removal, MAC alleged the range of prices for the promotional products. (Dkt. No. 1 at ¶ 28.) After Plaintiffs moved to remand, MAC offered a declaration from its outside counsel, Ms. Gao, who testified that the average price of MAC's best-selling makeup products is $27.40 per product, based on her analysis of MAC's website. (Dkt. No. 13-1 ¶ 2.) In their reply, Plaintiffs submitted their own declarations attesting that MAC's best-selling products were more expensive than the new, "promotional" products employees were required to purchase, but they did not otherwise challenge the prices alleged by MAC. (Dkt. Nos. 15-1 ¶ 5, 15-2 ¶ 5.) After the Court gave MAC leave to respond to Plaintiffs' reply, MAC submitted testimony from Field Executive Sales Managers with personal knowledge that promotional products are priced similar to best-selling products (Dkt. Nos. 18-2 ¶ 3, 18-3 ¶ 3, 18-4 ¶ 3), one of whom, Amber Miller, testifies to the approximate prices of best-selling and promotional products. (Dkt. No. 18-2 ¶ 3.)

The Court finds Ms. Miller's testimony as to the average price of promotional products reasonable. MAC has offered testimony from multiple Field Executive Sales Managers that the prices of promotional products and best-selling products are comparable. (Dkt. Nos. 18-2 ¶ 3, 18-3 ¶ 3, 18-4 ¶ 3.) Ms. Miller attests to the average prices of both promotional and best-selling products ($27 and $27.40, respectively) which are in line with this testimony. (Dkt. No. 18-2 ¶ 3.) Therefore, the Court finds Ms. Miller's testimony regarding the average price of promotional products as $27 per product to be a reasonable assumption.

The Court may consider Ms. Miller's testimony regarding the MAC website's contents because the Court may hear evidence that is not in a form in which it would be admissible at trial. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must . . . set out facts that *would be* [but not necessarily are] *admissible* in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Thus, "when evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003)). Ms. Miller, as a MAC Field Executive Sales Manager, could testify at trial as to the average sales price

of MAC's products.  (Dkt. No. 18-2 ¶ 1 (stating that testimony is based on personal knowledge).)

Accordingly, accepting MAC's assumption that best-selling products and promotional products are comparably priced, and using the evidence offered by Ms. Miller regarding the average price of promotional MAC products, the Court assumes that the promotional products employees purchased as a requirement of working for MAC cost, on average, $27 per product.[1] Therefore, for the purposes of calculating the possible amount in controversy, the putative class could have spent an estimated $2,114,753.4 on MAC products ($27 multiplied by 78,324.2 products purchased).

### 2. Price of clothes purchased for work

Because the parties agree that the cost for male clothing and female clothing items differ, the Court must determine a separate reasonable assumption for each when determining the possible amount in controversy on the failure to reimburse for clothes purchased claim.

Plaintiffs' assumption that male employees spent $36.25 per item of clothing on average is reasonable.  (Dkt. Nos. 15 at 14:2-5, 15-1 ¶¶ 8-9.)  MAC attempts to offer an alternative assumption based on Ms. Gao's review of websites for stores where plaintiff Maciel attests he shopped.  (Dkt. No. 18-1 ¶¶ 4-6, 8, 12-13.)  Plaintiff Maciel's personal knowledge regarding what he spent on average for clothes to comply with MAC's requirements provides a more reasonable assumption than Defendant's outside counsel's testimony as to her evaluation of today's average price of men's clothing from where Mr. Maciel shopped.  Outside counsel's personal evaluation of websites is not the reliable "summary judgment type" evidence required to support the defendant's amount-in-controversy burden.  *See Fritsch v. Swift Transp. Co. of Ariz.*, LLC, 899 F.3d 785, 793 (9th Cir. 2018); *see also Kleinsasser v. Progressive Direct Ins. Co.*, No. 21-35351, 2022 WL 822192, at *1 (9th Cir. Mar. 18, 2022) (stating that the district court did not err in concluding that one party's evidence was "the best and most reliable" on the value of the average claim for purposes of CAFA amount-in-controversy calculation).

Therefore, the Court adopts Plaintiffs' assumption, based on Mr. Maciel's declaration, that

---

[1] The Court does not accept Ms. Gao's testimony because as MAC's outside counsel she has no personal knowledge of MAC's pricing and she would not be allowed to so testify at trial.

male employees could have spent $36.25 per item of clothing, on average.

The Court finds that the preponderance of evidence lands between Plaintiffs'[2] and MAC's[3] assumptions as to the average amount female employees spent per item of clothing: $25 and $57.92, respectively. First, the three declarations MAC offers, and the one declaration Plaintiffs offer, in support of their respective assumptions are not representative of the putative class— MAC's three declarants are Field Executive Sales Managers, (Dkt. Nos. 18-2, 18-3, 18-4), and Plaintiffs' declarant was a makeup artist and MAC manager,[4] (Dkt. Nos. 1-1 ¶ 5, 15-2 ¶ 6). In other words, MAC's assumption is based solely on evidence as to what managers spend, while Plaintiffs' assumption is based solely on evidence of what non-managers spend. The putative class, however, spans a wide variety of job titles and hierarchical positions. (*See* Dkt. No. 1-1 ¶ 25 (the putative class includes "[a]ll current and former employees of MAC located anywhere within . . . California").)

Second, MAC's assumption of $57.92 on average for women's clothing purchases is based on an outlier high range from one declarant, Ms. Holloway,[5] even though all three of MAC's declarants hold the same job title. Accordingly, in reviewing MAC's evidence, the Court assumes other employees in similar positions to MAC's declarants more likely spent $50-60 on bottoms average rather than the $50-200 attested to by Ms. Holloway. Therefore, in estimating the possible amount in controversy, the Court will instead assign to Ms. Holloway the same estimation as Ms. Miller: $50-60 for bottoms. With this adjustment, averaging the amount attested to by MAC's declarants, they spent approximately $46.25 per item of clothing.

---

[2] Plaintiff Torres attests she spent, on average, $25 per item of women's clothing as a makeup artist and manager. (Dkt. Nos. 1-1 at 5:20, 15-2 ¶¶ 6, 10.)
[3] Considering the declarations included in MAC's sur-reply, the average cost of an item of women's clothing purchased for work at MAC is $57.92. (Dkt. Nos. 18-2 ¶ 4, 18-3 ¶ 4, 18-4 ¶ 4.)
[4] There is some ambiguity as to whether Plaintiff Torres was a makeup artist or manager. In her declaration, Ms. Torres refers to her employment as a manager. (Dkt. No. 15-2 ¶ 6.) However, in the Complaint, Plaintiffs state she is a makeup artist. (Dkt. No. 1-1 ¶ 5.)
[5] In Ms. Holloway's declaration, she attests she spends "approximately $50 to $200 per pair of pants or skirts." (Dkt. 18-4 ¶ 4.) This is in stark contrast to Ms. Smithwick and Ms. Miller, who each state they spend somewhere between $35-60 for bottoms. (*See* Dkt. No. 18-3 ¶ 4 (Ms. Smithwick spends "$35-45 for pants, skirts, or dresses"); Dkt. No. 18-2 ¶ 4 (Ms. Miller states: "I paid about . . . $50-60 for bottoms").) Ms. Holloway's upper bound of $200 for pants is unreasonable when compared with MAC's other declarants and with plaintiff Torres's attestation.

Because the putative class likely consists of some mix of make-up artists and Field Executive Sales Officers and positions in between, the Court finds the preponderance points to the adjusted average of MAC's declarants' spending on clothing ($46.25 per item) and plaintiff Torres's spending on clothing ($25 per item) to obtain an average of $35.63 per item employees spent on women's clothing.[6]

Therefore, for the purposes of calculating the possible amount in controversy, the Court calculates the estimated cost spent by male employees as follows: $36.25 per item of clothing, on average, multiplied by 54,827 months worked times 0.3 (the proportion of class members who are male). This equals $596,243.63 spent by male employees on clothing. The Court calculates the estimated cost spent by female employees as follows: $35.63 per item of clothing, on average, multiplied by 54,827 months worked times 0.7 (the proportion of class members who are female). This equals $1,367,440.207. Adding those numbers together, the putative class could have spent as much as $1,963,683.837 on clothing to comply with MAC's image requirements.

### 3. Attorneys' Fees

"When a statute . . . provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922. Here, Plaintiffs demand attorneys' fees (Dkt. No. 1-1 ¶¶ 54, 63), and if they prevail on their Labor Code Section 2802 expense reimbursement claim, they are entitled to an award of attorneys' fees. *See* Cal. Lab. Code § 2802(c). Therefore, attorneys' fees must be included in the assessment of the amount in controversy.

MAC "must prove the amount of attorneys' fees at stake by a preponderance of the evidence." *Fritsch*, 899 F.3d at 796. To meet the $5 million threshold, MAC must prove that

---

[6] MAC attempts to offer an alternative assumption based on Ms. Gao's review of websites for stores where plaintiff Torres attests she shopped. (Dkt. No. 18-1 ¶¶ 2-3, 6-7, 9-11, 13.) Plaintiffs timely objected to Ms. Gao's testimony regarding the prices displayed for clothing on these stores' websites as hearsay. (Dkt. No. 19 at 7:8, 8:25, 13:17, 15:5, 18:12, 19:26, 21:12, 24:21.) For the reasons explained, *supra* note 1, Ms. Gao's testimony is not the best nor most reliable evidence. MAC, in its sur-reply, offered declarations from three female Field Executive Sales Managers based on their personal experiences, which the Court uses in determining the reasonable assumption here. (Dkt. Nos. 18-2 ¶ 1, 18-3 ¶ 1, 18-4 ¶ 1.)

1	attorneys' fees of at least $921,562.77 are at stake.[7]

2	      In its opposition to the motion to remand MAC merely stated that attorneys' fees must be included in the amount in controversy, without providing any estimate of the fees, let alone evidence in support of an estimate. (Dkt. No. 13 at 15.) After the Court gave MAC leave to file a sur-reply, MAC still did not offer any evidence in support of the amount of attorneys' fees, even though it offered evidence in support of other amount-in-controversy elements. (Dkt. No. 18.) Instead, MAC merely argued that in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), the Ninth Circuit "established 25% of the common fund as a benchmark award for attorneys' fees" and therefore 25% of the estimate of the possible compensatory damages should be added to the compensatory damages amount. (Dkt. No. 18 at 7:12-25.)

      MAC's reliance on *Hanlon* does not support by a preponderance of the evidence an attorneys' fees award. The Ninth Circuit has rejected the very argument MAC makes. In *Fritsch*, the defendant argued, as does MAC here, that the attorneys' fees should be considered 25% of any alleged recovery because in common fund cases the Ninth Circuit has "estimated reasonable attorneys' fees to be 25 percent of the total recovery." *Fritsch*, 899 F.3d at 796 (citing *Hanlon*, 150 F.3d at 1029). The Ninth Circuit rejected the argument because "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; [courts] may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." *Id.* Thus, *Fritsch* precludes a finding that MAC has met its evidentiary burden merely by citing *Hanlon*. *See Ramos v. TDB Commc'ns, Inc.*, No. 2-22-CV-00479-KJM-CKD, 2022 WL 2906509, at *2 (E.D. Cal. July 22, 2022) (rejecting an unsupported 25% assumption for attorneys' fees); *Akana v. Estee Lauder Inc.*, No. LA CV-19-00806 JAK (PLAx), 2019 WL 2225231, at *7-8 (C.D. Cal. May 23, 2019) (refusing to permit the "conclusory assertion" that a 25% attorneys' fee recovery would be a reasonable estimate); *Loaiza v. Kinkisharyo Int'l, LLC*, 2020 WL 5913282, at *13 (C.D. Cal. Oct. 6, 2020) (refusing to accept a 25% assumption of attorneys' fees); *Martinez v. Pub. Consulting Grp., Inc.*, No. 22-CV-00813-

---

[7] This number is calculated by subtracting the possible damages of $4,078,437.24 established by this Court from $5,000,000.01.

9

WQH-DDL, 2022 WL 8176154, at *5, *7, *8 (S.D. Cal. Oct. 13, 2022) (refusing to accept a 25% benchmark for attorneys' fees when defendant failed to present any evidence supporting it).

Moreover, *Fritsch* also noted that "[a] state may adopt the lodestar method for determining reasonable attorneys' fees under certain statutes" and "[t]he court's determination regarding the amount of attorneys' fees at stake must take into account these statutory . . . restrictions." *Id.* The lodestar figure is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Candle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). California Labor Code section 2802(c) is one of those statutes that uses the lodestar as it provides for an award of "attorney's fees incurred by the employee enforcing the rights granted by this section." MAC's 25% benchmark argument does not take into account the lodestar statutory restriction as *Fritsch* requires. Instead, it is a percentage used in the class action settlement context when fees are taken from the funds made available to the class rather than paid separately by the defendant in addition to what is paid to the class. As one court has noted, estimating the attorneys' fees by applying the 25% benchmark from the settlement context to the total amount in controversy will usually overstate the fee award plausibly recoverable pursuant to a fee-shifting statute and is not an additional amount to which a prevailing plaintiff is entitled to be paid by the defendant. *Gurzenski v. Delta Air Lines, Inc.*, No. 2-21-CV-05959-ABJ-EMX, 2021 WL 5299240, at *4–5 (C.D. Cal. Nov. 12, 2021).

Because MAC has not provided the Court with any evidence in support of its 25% benchmark fee assumption, it has not met its burden to include attorneys' fees in the amount-in-controversy calculation. *See Fritsch*, 899 F.3d at 795 (holding that the defendant must prove the possible amount of attorneys' fees by a preponderance of the evidence with summary-judgment-type evidence, and when it fails to meet this burden, "[a] district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy").

While the Court assumes there is some amount of attorneys' fees at issue in this case, in light of the Court's analysis above, for the amount in controversy to exceed $5 million, attorneys'

fees would have to be at least $921,562.77.[8]  For the reasons explained above, the record does not support a finding by a preponderance of the evidence that such amount of attorneys' fees is at issue.

**4.  Summary**

In summary, the Court adopts the following assumptions in the calculation of the amount in controversy:

- The putative class consists of 2,800 people who worked a total of at least 54,827 months.  (Dkt. No. 1-4 ¶ 6.)

- The putative class consists of 70% women and 30% men.  (Dkt. No. 15-1 ¶ 4.)

- The putative class members each purchased one clothing item per month.  (Dkt. No. 13 at 13:24-25.)

- Each putative class member purchased a MAC cosmetic product for a promotional event every three weeks, totaling 78,324.2 MAC products purchased by the putative class.  (Dkt. Nos. 15-1 ¶ 3, 15-2 ¶ 3, 18 at 3:17-21.)

- The average cost of each MAC product purchased was $27.  (Dkt. No. 13-1 ¶ 2.)

- The average cost of an item of women's clothing was $35.63.  *See* s*upra* Part B.2.

- The average cost of an item of men's clothing was $36.25.  (Dkt. Nos. 15 at 14:2-5, 15-1 ¶¶ 8-10.)

| Calculation for products purchased |
|---|
| 78,324.20 events * $27/product = **$2,114,753.4** spent on MAC products purchased for promotional events |

| Calculation for clothing purchased by women |
|---|
| 54,827 months worked by the class * 0.7 proportion of the class who are women = 38,378.9 months worked by female class members |
| 38,378.9 months * 1 item/month * $35.63/item = **$1,367,440.21** spent on clothing purchased by female employees |

---

[8] *See supra* note 7.  Indeed, even if the Court accepts MAC's managers' estimate of the amount they spent on clothing without taking into account what Plaintiffs' evidence shows, and thus accepts an average price of $46.25 per item of women's clothing, MAC will still not have met its burden given the lack of any evidence as to an attorneys' fees estimate.

11

| Calculation for clothing purchased by men |
|---|
| 54,827.07 months worked by the class * 0.3 proportion of the class who are men = 16,448.1 months worked by male class members |
| 16,448.1 months * 1 item/month * $36.25 = **$596,243.63** spent on clothing purchased by male employees |

| Total possible amount in controversy |
|---|
| **$2,114,753.4** spent on products purchased for promotional events |
| **$1,367,440.21** spent on clothing purchased by female employees |
| **$596,243.63** spent on clothing purchased by male employees |
| $**4,078,437.24** total without attorneys' fees |

Therefore, the preponderance of the evidence shows it is possible the maximum amount in controversy is $**4,078,437.24**, which is not greater than the $5 million floor CAFA sets for this Court's jurisdiction, and MAC has not met its burden to defeat remand. *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("To meet CAFA's amount-in-controversy requirement, a defendant needs to plausibly show that it is reasonably possible that the potential liability exceeds $5 million").

## CONCLUSION

Plaintiffs' motion to remand argues that "there is a strong presumption against the exercise of removal jurisdiction" and that "[d]oubts as to removability are resolved in favor of remanding the case to state court." (Dkt. No. 7 at 6:20-21.) Plaintiffs are incorrect. "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89. Nonetheless, applying the correct legal standard, MAC has not satisfied its burden to demonstrate by a preponderance of the evidence that the possible aggregate amount in controversy exceeds $5 million. Therefore, the motion to remand is GRANTED.

**IT IS SO ORDERED.**

Dated: November 30, 2022

_____
JACQUELINE SCOTT CORLEY
United States District Judge